UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KIBBY ROAD, LLC**,<br>Plaintiff,<br>v.<br>**NORTHERN TRUST COMPANY**,<br>Defendant. | Case No. 15-cv-00795-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br>Re: Dkt. No. 8 |

Plaintiff Kibby Road, LLC filed this case in state court on February 6, 2015. (Dkt. No. 1 ("Notice of Removal") ¶ 1.) The case stems from the plaintiff's purchase of real property at a trustee sale on January 27, 2015, and the plaintiff's contention that despite clear indication in the notice of foreclosure that the property was being sold subject to a senior lien, the plaintiff should now own the property outright.

The operative complaint asserts causes of action for: (1) equitable subordination;[1] (2) quiet title; (3) cancellation of deed of trust pursuant to California Civil Code § 3412; and (4) declaratory relief. (Notice of Removal, Ex. 2 ("FAC").) Defendant Northern Trust Company removed the case to federal court based on diversity jurisdiction. (Notice of Removal ¶¶ 3-4.) Thereafter, the defendant moved to dismiss, arguing the First Amended Complaint fails to state a claim upon which relief can be granted. (Dkt. No. 8 ("Mot.").)[2] The plaintiff opposed the motion. (Dkt. No.

---

[1] The plaintiff later clarified, in response to an inquiry from the Court, that this claim was, in fact, intended to be for equitable subrogation. (Dkt. No. 20 at 4.)

[2] In connection with its motion, the defendant filed a request for judicial notice of certain publicly recorded documents connected to the subject property—namely, modifications of one of the liens at issue and a notice of default on the foreclosed lien, among other documents. (Dkt. No. 9 ("RJN").) The defendant then filed a supplemental request for judicial notice of legislative history documents relating to California real estate law. (Dkt. No. 15 ("Supp'l RJN").) The Court **GRANTS** the unopposed requests pursuant to Federal Rule of Evidence 201. "[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th

13 ("Oppo.").)[3]  The motion was heard on April 28, 2015.

Having carefully considered the papers submitted, the operative complaint, and the arguments of counsel, and good cause shown, the Court hereby **GRANTS** the motion and **DISMISSES** this action **WITHOUT LEAVE TO AMEND**.  For the reasons set forth herein, no basis exists as a matter of law to disrupt the articulated priority of the liens on the property at issue.

**I.   BACKGROUND**

The plaintiff purchased the property located at 217 Still Creek Road, Danville, California (the "Danville Property") on January 27, 2015, at a foreclosure sale.  (FAC ¶ 2.)  At the time of the auction, the defendant held two liens over the property.  (*Id*. ¶¶ 9-10.)  The liens apparently derive from agreements entered into on April 29, 2003.  (*Id*.)  On that day, the prior owners of the Danville Property: (1) obtained a revolving line of credit in the amount of $100,000, secured by the property; and (2) refinanced their mortgage and two other outstanding loans secured by the property with a new, thirty-year loan with an original principal amount of $600,000.  (*Id*.)  Both of these new loans were provided by the defendant.  (*Id*. ¶¶ 3, 9-10.)  Deeds of trust were recorded for both transactions with an *identical* timestamp: "Tuesday, MAY 06, 2003 08:00:00."  (*Id*. ¶ 11, Exs. E-F.)  The $100,000 line of credit lien was given document identification number 2003-0208480-00.  (FAC, Ex. F (the "Line of Credit Lien").)  The $600,000 lien was given document number 2003-0208481-00.  (FAC, Ex. E (the "Foreclosed Lien").)

Importantly, the Line of Credit Lien indicated it secured the "total amount of the Credit Agreement."  (Line of Credit Lien at 1.)  "Credit Agreement" is defined as the April 29, 2003 credit agreement with a credit limit of $100,000, "together with all [subsequent] modifications" thereto.  (*Id*. at 11.)  Since its issuance, the $100,000 line of credit was increased twice.  First, on July 2, 2004, it was increased to $200,000 (FAC ¶ 32), and a "modification of deed of trust" regarding this increase was recorded on July 12, 2004 (RJN, Ex. 1).  Then, on October 28, 2005,

---

Cir. 2001).

[3] After the defendant filed its reply (Dkt. No. 14), the parties submitted supplemental briefs (Dkt. Nos. 18 and 20) addressing specific issues raised by the Court.

1   the line of credit increased to $500,000. (FAC ¶ 34.) The second modification was also recorded,

2   on November 7, 2005. (RJN, Ex. 2.) Both modifications specifically noted they related to the

3   Line of Credit Lien. (RJN, Exs. 1-2.)

4       On April 1, 2014, a Notice of Default was recorded as to the Foreclosed Lien. (RJN, Ex. 3

5   ("NOD").) The NOD noted multiple times that the Foreclosed Lien was a "Junior Deed of Trust,"

6   and unmistakably explained that the Line of Credit Lien would "REMAIN ON TITLE

7   THROUGH TRUSTEE SALE AND AUCTION" and that "A SUCCESSFUL THIRD PARTY

8   BIDDER WILL TAKE TITLE SUBJECT [TO] SAID SENIOR DEED OF TRUST." (*Id*.) Both

9   liens were clearly identified by their respective document identification numbers. (*Id*.)

10      The Notice of Trustee's Sale was recorded on December 31, 2014, indicating title to the

11  property—again, "subject to" the "senior" Line of Credit Lien—would go to the highest bidder at

12  a January 27, 2015 public auction. (RJN, Ex. 5 ("NOS").)[4] The plaintiff was the successful

13  bidder at the January 27 auction. (FAC ¶ 2.) Thereafter, the defendant sent the plaintiff a notice

14  indicating the plaintiff's interest in the property remains subject to the Line of Credit Lien

15  (including the modifications thereto), now totaling approximately $590,000. (*Id*. ¶ 29.)

16      In its FAC, the plaintiff alleges (1) a "mistake in recording sequence" (i.e., the plaintiff

17  apparently alleges the Line of Credit Lien was intended to be junior and received the lower

18  identification number in error) or (2) in the alternative, that the subsequent modifications to the

19  Line of Credit Lien, as a "material change," caused that lien to lose its priority to the Foreclosed

20  Lien. (*Id*. ¶¶ 17, 32.) The plaintiff claims that at the trustee sale, it therefore "took the Subject

21  Property free and clear of other liens or lines of credit." (*Id*. ¶¶ 18, 24, 28, 34.)

22  **II.   LEGAL STANDARD**

23      "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the

24  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

---

[4] An earlier Notice of Default regarding the Line of Credit Lien, including a "Declaration of Compliance" that indicated it was "not secured by a first lien mortgage," was *rescinded* almost nine months prior to the NOS. (*See* FAC, Ex. G (June 14, 2013 Notice of Default); RJN, Ex. 4 (April 3, 2014 Notice of Rescission).)

3

what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted against that defendant. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). The Court also "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

### III.  DISCUSSION

#### A.  Motion to Dismiss

In moving to dismiss, the defendant presents a number of arguments regarding the

4

appropriateness of certain asserted causes of action. The Court need not specifically address those arguments, however, because they all turn on four alternative legal theories that undergird the entire complaint—namely, that: (1) the plaintiff did not purchase the property subject to the Line of Credit Lien; (2) the Line of Credit Lien should be equitably subrogated to the Foreclosed Lien; (3) the modifications to the Line of Credit Lien served to subordinate that lien to the Foreclosed Lien; and (4) the modifications to the Line of Credit Lien were junior to the Foreclosed Lien and therefore extinguished by the foreclosure sale. The Court addresses each legal theory in turn. Without at least one viable legal theory, the complaint cannot stand.

### 1.  The Priority of the Line of Credit Lien

The heart of this case turns on what is readily apparent from the publicly recorded documents at issue, namely whether the plaintiff purchased the Danville Property subject to the Line of Credit Lien. Based on a review of the recorded documents, the Line of Credit Lien was senior to the Foreclosed Lien, and title to the property was therefore purchased at auction "subject to" the Line of Credit Lien. The plaintiff nevertheless challenges this priority.

The Court finds that, as to their respective priorities, the order of the liens, by identification number, is dispositive where, as here: (1) a *single* lender records two liens that are otherwise silent as to priority, (2) they receive *identical* timestamps, and (3) no subsequently recorded document (i.e., a subordination agreement) modifies their respective priorities. The Court is not inclined to depart from this commonsense and longstanding approach. To suggest that a potential claim exists wherever, under like circumstances, a buyer files a lawsuit baldly alleging a "mistake" in the recording sequence would wreak havoc on the status of such liens and create unwarranted uncertainty in a system where clarity is a paramount virtue.

The purpose of the recording system is to provide notice and transparency regarding the status of a parcel of real property, including the priority of any liens placed on the property. Here, the plaintiff had constructive, if not actual, notice of the priorities of these liens. *See* Cal. Civ. Code § 1213 (providing that proper recording of a "conveyance" of real property—defined to include any written instrument encumbering or mortgaging title to any real property—provides "constructive notice of the contents thereof to subsequent purchasers and mortgagees"); *see also*

5

1   Miller & Starr, 5 Cal. Real Est. § 11:100 (3d ed. 2009) ("[T]he liens of any trust deeds recorded
2   before the foreclosed security remain on the property after the foreclosure sale, and the title of the
3   purchaser is subject to the payment of their secured obligations when due.").
4         The plaintiff's authority for a contrary result does not persuade. The primary case cited
5   involved liens with identical timestamps held by *different* lenders, where the simultaneous
6   recordation prevented either lender from receiving constructive notice of the other's lien prior to
7   filing its own. *See, e.g.*, *First Bank v. E. W. Bank*, 199 Cal. App. 4th 1309, 1311 (2011) (holding
8   two liens recorded by different lenders with simultaneous timestamps had equal priority because,
9   "important[ly,] both banks acquired their property interests *without* constructive notice" of the
10  other's). Here, where both liens were recorded by and for the benefit of the same lender, the
11  notice and fairness concerns attendant to the proper operation of California's "race-notice"
12  system—addressed in *First Bank* and similar cases—are not implicated. *First Bank* does not stand
13  for the general proposition that someone can challenge an undisturbed and obvious numbering
14  priority a decade after the fact without cause.

15      **2.    Equitable Subrogation**
16        In the alternative, the plaintiff argues that even if the Line of Credit Lien is senior to the
17  Foreclosed Lien, the former should be equitably subrogated to the latter. "The doctrine of
18  equitable subrogation is an exception to the first in time, first in right rule and applies in those
19  situations where equity requires a different result." *JP Morgan Chase Bank, N.A. v. Banc of Am.*
20  *Practice Solutions, Inc.*, 209 Cal. App. 4th 855, 860 (2012). These circumstances—where a buyer
21  at a foreclosure sale had received clear, constructive notice that the purchase would remain subject
22  to a senior lien—do not warrant application of the doctrine. Indeed, the plaintiff fails to adduce a
23  single case applying this exceptional doctrine in similar circumstances. Across the board, the
24  cases cited regarding this remedy involve facts far different from those at issue here. They
25  typically involve *competing lienholders* arguing that one lien should be equitably subrogated to
26  the other for one particular reason or another, such as where the junior lienholder had issued a
27  purchase-money mortgage that was intended to be secured by a senior lien on the property. *See,*
28  *e.g.*, *JP Morgan Chase Bank, N.A.*, 209 Cal. App. 4th at 860.

6

1    The plaintiff also cites *Briggs v. Crawford*, 162 Cal. 124 (1912), for the broad proposition,
2    in the plaintiff's words, that "a purchaser at sale under a deed of trust . . . is a successor in interest
3    of the mortgagor/trustor and may maintain action against the holder of the note to challenge its
4    validity." (Oppo. at 2.) *Briggs*, however, does not support the notion that a successor in interest
5    can manufacture challenges where one did not previously exist.[5]

6    In the instant case, the defendant previously held both liens and could not have sued itself
7    for equitable subrogation. The plaintiff's argument—that by placing the winning bid at the
8    foreclosure auction, it in fact purchased the Foreclosed Lien *itself* and is therefore able to step into
9    the shoes of the defendant, now acting as a competing lienholder—is unfounded. The plaintiff
10   points to statutorily-required language included in the NOS intended to protect un-savvy
11   purchasers at foreclosure sales: "You will be bidding on a lien, not on the property itself." (NOS
12   at 2; *see also* Supp'l RJN, Exs. 6-7.) Because of this language,[6] the plaintiff argues it purchased
13   the junior lien itself, not title to the property subject to any remaining senior liens. While this is
14   certainly a creative argument, California property law is clear: at a trustee sale, the foreclosed
15   upon lien is extinguished when the winning bidder takes title to the property, subject to any
16   remaining senior liens. *See* Cal. Civ. Code § 2910 ("The sale of any property on which there is a
17   lien, in satisfaction of the claim secured thereby, . . . extinguishes the lien thereon."); Miller &
18   Starr, 5 Cal. Real Est. § 11:100 (3d ed. 2009) ("Upon a foreclosure sale under a deed of trust or
19   mortgage, the purchaser's *title* has priority from the date of the priority of the foreclosed lien.")

---

[5] *Briggs* involved a "fraudulent scheme" wherein a senior lien had been recorded without adequate consideration. *Briggs*, 162 Cal. at 126. Under those circumstances, the court found that a subsequent purchaser of title to the property had in fact become "a successor in interest of the [prior] mortgagor," and thus able to challenge the validity of such lien in the same manner that the prior owner could have. Here, no facts are alleged to support any facially valid challenge to the recorded priority or validity of the Line of Credit Lien.

[6] The plaintiff also points to language in the February 2, 2015 Trustee's Deed Upon Sale that stated the defendant "does hereby GRANT and CONVEY to [the plaintiff] . . . but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the junior Deed of Trust . . . in and to the [Danville Property]." (FAC, Ex. A.) However, the document goes on to clarify that the plaintiff "being the highest bidder at [the auction] became the purchaser of said property . . . in full satisfaction of the debt secured by the [Foreclosed Lien] but subject to the existing senior deed of trust." (*Id.*)

1   (emphasis supplied); *see also* Cal. Civ. Code § 2924f(b)(8)(C) (noting the statutorily-required language quoted above is not "intended to modify or create any substantive rights or obligations for any person providing, or specified in, either of the required notices"). The plaintiff's attempt to justify equitable subrogation under the undisputed facts and allegations at issue here fails as a matter of law.

### 3. Subordination by Subsequent Modifications

The plaintiff next argues that modifications to the Line of Credit Lien themselves, which were recorded approximately one and two years after both the Line of Credit Lien and Foreclosed Lien, operated to subordinate the Line of Credit Lien. The cases the plaintiff cites for this theory generally relate to a scenario where a junior lienholder's interest is improperly infringed by unfair conduct involving a senior lien. *See, e.g.*, *Gluskin v. Atl. Sav. & Loan Assn.*, 32 Cal. App. 3d 307, 307-10 (Cal. Ct. App. 1973) ("The precise controversy is whether a modification of one of the [senior loans] disturbed the priority that [the senior lienholder and defendant] had by reason of a subordination agreement or so prejudiced [the plaintiff] as a junior lienor that it gained priority over [the defendant]."); *see also Lennar Ne. Partners v. Buice*, 49 Cal. App. 4th 1576, 1580 (1996) (holding modifications to a deed of trust by a senior lienholder did not receive priority over a junior lien held by a third party, but the senior lien itself maintained its priority). The critical distinction again between these cases and the instant dispute is that here, when the relevant conduct was undertaken, *the same entity* held the entire interest in both liens. The concerns that warranted the remedies afforded in those cases—to protect the interests of a *different* junior lienholder—simply do not apply here. Thus, the modifications did not subordinate the Line of Credit Lien.

### 4. Priority of Modifications to the Line of Credit Lien

Finally, the plaintiff argues the modifications to the Line of Credit Lien themselves— which were recorded after the Foreclosed Lien and which substantially increased the amount of the Line of Credit Lien—are junior to the Foreclosed Lien. *See Lennar*, 49 Cal. App. 4th at 1587 (citing various authorities and treatises discussing the priority of lien modifications). The authority suggesting this approach is focused on circumstances where different parties hold the

8

senior and junior liens at issue, such that the modifications to senior liens would, if granted seniority, unfairly harm the interests of the junior lienholder.  Therefore, again, the basis for that approach does not apply in these circumstances, where the defendant held both liens at all relevant times.  The plaintiff cites no authority to the contrary.

Under the facts at issue here, the Court looks to the plain language of the recorded documents and finds that the Line of Credit Lien clearly stated that it secured the total amount of the "Credit Agreement," "together with all … modifications" thereto.  Consequently, the later modifications increased the amount secured by the senior lien.  When it purchased the property at the foreclosure auction, the plaintiff had constructive notice of the scope of that lien (as modified).  It now improperly seeks to obtain a windfall premised upon misapplication of legal authority in a manner that, if credited, would add unnecessary complexity and uncertainty to the recording process.

### B.   Leave to Amend

Leave to amend is liberally granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v. West Pub. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  One exception to this general rule of permissiveness, however, is where amendment would be futile.  *Foman*, 371 U.S. at 182; *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).  This case presents a straightforward disagreement as to a basic legal question, where the relevant facts—the existence and contents of publicly recorded documents—are not in dispute.  The plaintiff has not pointed to any additional facts or theories that could adequately support its case if the Court, as it has done herein, rejects the plaintiff's novel legal theories.  Moreover, because each of the claims asserted—(1) equitable subrogation, (2) quiet title, (3) cancellation of deed of trust; and (4) declaratory relief—hinge on at least one theory discussed herein, each fails as a matter of law.  Thus, leave to amend under these circumstances would be futile.

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the defendant's motion and **DISMISSES** this action **WITHOUT LEAVE TO AMEND**.  The defendant shall prepare and file a proposed form of judgment, approved as to form by the plaintiff, within five (5) business days of the date of this

9

Order.

This Order terminates Docket Number 8.

**IT IS SO ORDERED.**

Dated: May 11, 2015

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE